case number 251262. Good afternoon, Mr. Colton. Long time no see. Good afternoon, Your Honor. An honor to appear before you and this court. Please proceed. Thank you, Your Honor. Oh, Judge Kobayashi, can you hear us? Yes, indeed. Thank you very much. May it please the court. My name is Glenn Colton, and I, along with my co-counsel, Stephen Miller, represent the appellant, Jeffrey Schneider, on this motion, an appeal from the denial of bail pending appeal. Your Honors, on this motion, the question is not whether the appeal will be successful, but whether there is a substantial question of law or fact that would result in a reversal or a new trial. Once that standard is met, the statute is not permissive. It is mandatory that bail shall be granted. And in this case, the question of whether there's a substantial question under this Court's jurisprudence is whether it is a question that could go either way under the Randall decision. We submit that the events of the last couple of weeks make that clear. The co-defendant and lead defendant in this case, David Gentile, was granted clemency by the President of the United States, who commented on his reasons for doing so and specifically stated a set of facts, that there was no crime here, very different from the facts that were presented. What is odd about that, Mr. Colton, is that the executive branch is what you're relying on in connection with this particular argument, but the executive branch is sitting to your right and is pressing the issue here. So how do we view that? The way I would view that, Your Honor, is the President of the United States made one statement that is directly and 100 percent at odds from the facts and law being asserted by the local United States Attorney's Office. Very, very different. On the one hand, the local United States Attorney's Office says the fraud is simple, page 2 of their brief, that the defendants, plural, lied and hid the fact, according to them, that the distributions paid to investors were from investor capital. The President of the United States, the head of the executive branch, through his spokesperson, said exactly the opposite, that that information was not hidden from investors and indeed said that GPB, the private entity, private equity entity, disclosed the possibility of using investor capital to pay these distributions, and thus the claim was profoundly undercut. Given that the executive branch has said two distinctly and vastly different claims, different facts, and one says there was a crime and one says there isn't, in and of itself, we would argue, is a substantial question that should preclude jailing Mr. Schneider until he gets his day in a full appellate court. That is the import, we believe, Your Honor. But also we'd ask that this — So the pardon itself and the statements to support it raise a substantial question? Not the pardon. In this case, a grant of clemency, to be precise. A grant of clemency. Right. Not the grant of clemency. The statements in support. If it was a, you know, just a grant of clemency with no reasons, which the President does not have to give, then that wouldn't support the argument we have. But when the President gave specific reasons for that grant of clemency that are directly at odds with the position being pushed by the local United States Attorney's Office that works for the President at the end of the day, we argue that that may raise some very substantial questions of law that this panel may have to deal with on the full merits panel. But it surely raises a substantial question that should preclude the deprivation of liberty and the deprivation of bail pending appeal. And we'd also ask that this Court weigh the other issues through the prism of that. So we say that there is, you know, numerous issues, all that we've briefed, that are in and of themselves substantial questions that could go either way that would require reversal. Issues that the Court below violated the Supreme Court's teaching in Simonelli and allowed the government to actually proceed on a theory that would allow an illegal conviction. So that theory, the rights control theory, is not stated or expressed in the indictment, nor was it at least expressed by the government in its submission. Where would I find in the record an express reference to the rights control theory? So there would be two places, Your Honor. Each and every witness that the government questioned, each investor and each securities professional was asked the question, after you invested in this and after you parted with your property, take a look at this new information and wouldn't you have wanted to know it? Each and every witness was asked that question. And then the government – I see the red light is on. I'd like to finish my answer. Each – the government in summation said, and I quote, just one lie about one fund is sufficient to convict. There were three funds at issue in this case, Holdings I, Holdings II, and Otto. And Holdings I closed to investors before any alleged false statement about the source of distributions was made. So the only way in which the government could proceed on a Holdings I theory would be the right to control the financial information theory. And again, the government also said in its summation, don't you think the people would have wanted to know that information? Over and over again, the government invited the jury to convict on a right to control theory. And this could have all been up. Right to control theory is not quite that. Usually it comes in the context of a company has information and that information is improperly disseminated by an insider or someone else. When it's the company's information, sort of a – not quite an insider trading theory. But here I think that the theory was that the information was false. The information that was disseminated was false or there was some omission of fact that if it had been known to the investors, would have been material to them. We could talk about materiality, but am I right or wrong about that? As you're stating it, you're correct, Your Honor, but there's an addition. If the information that the government claims was false was provided to an investor in order to obtain their property or their money, that's classic wire fraud. That's classic securities fraud, we would argue. Securities fraud, whatever, yeah. But that's not what they said. They said to each and every witness, your money has already been paid. It has already been obtained. And then you received false information. Wouldn't you have wanted to know that? That's not designed to get money or property. That's simply withholding financial information that they elicited, the government elicited, that a witness or an investor who had already invested would want to know in order to determine whether to seek a redemption or seek to dispose of the investment. That's financial information to make financial decisions, precisely what the Supreme Court in Simonelli said is not money or property. And that's the argument on Simonelli. Your Honor, again, I see the time is up. I would like to address the other two points. Briefly. Okay, very briefly, certainly. With respect to the materiality, Your Honor, simply the instruction in this case violated this Court's teachings in Litvak and the Supreme Court teachings in Gowden, Nader, and Carnegie. In essence, there is no dispute that these investments could only be sold to sophisticated and accredited investors. That was the audience. And the court below instructed the jury that materiality should be gauged by any person in the population, whether it be sophisticated or gullible. But the non-sophisticated were ineligible to purchase these investments. And under the teaching of Litvak, the court should have instructed the jury that the relevant materiality question is the target audience. And, indeed, the Supreme Court in Nader, cited by the government, said exactly that. It's a question of whether the information would be material to the target decision-making body. Here, that is not the instruction that was given. And the government defends that instruction by saying who cares. In other words, so as I understand it, the theory was that the statements were materially misleading because they suggested, implied, stated that no investor capital was going to be used to pay distributions. And, in fact, investor capital was used to pay distributions. So whether it's a gullible investor or a non-sophisticated investor or a high-net-worth investor, who cares? So the facts, as laid out in the record, make clear that it did matter. Each and every government witness that took the stand said that they learned of the possibility that investor capital would be used to pay distributions. And each and every one of them admitted that they did not seek redemption, did not seek to sell, and did not seek to take any action after learning that information. So the sophisticated investor that was put on the stand admitted it was not material. Were investors advised before they invested that the distributions would be fully covered? So, Your Honor, it's very unclear in the record what the government is relying on and what the investors were promised. And a careful look at the government's brief submitted in this court on November 24th, 16 months after trial, gives six different permutations of what the allegedly false statement was, all of which are very different. So it's very hard to argue one thing or another. But what I will say... Well, do you think a sophisticated investor would make an investment in something in which the subsequent investor's capital is going to be used to pay them? I think that each and every witness that testified said that they saw either a financial statement that indicated that possibility or a disclosure that indicated that possibility, and not a one of them sought to sell back their investment or redeem their investment. And we submit that actions speak louder than words. And that information factually was not material to those investors. And then by virtue of giving an instruction that says, you can consider other investors, like gullible investors, who are not eligible, who did not come into this courtroom, was an error, and it violates the teachings of Litvak, and it violates the teachings of Nader, which specifically say that materiality has to be gauged by the target decision-making body, not just gullible investors. I'm going to give you one minute for your next argument. Thank you, Your Honor. Finally, we argue that both the instructions and the record as developed do not demonstrate falsity under this Court's teachings in Connolly. The wire fraud statutes are not designed to just deal with bad acts. It has to be specifically false. And here, the government, even in their brief here, says that the distributions had to come from cash flow or profits from the portfolio companies or income from the portfolio companies. And that metric, according to their own witnesses, is something called total investment income. That is what their witnesses testified to. And there was no dispute at the trial that the total investment income of these funds during the relevant period was greater than the distributions paid. That was the evidence. So given that the Court did not charge the jury that the government had the Connolly burden of demonstrating falsity under each reasonable interpretation of the statement, it allowed the jury to convict on a basis not supported by this Court's teachings in Connolly. Thank you. Thank you, Your Honor. Are there any others? Judge Kovanez, no questions? No questions, thank you. Thank you, Your Honors. Judge Axelrod, thank you. Good afternoon, Your Honors. My name is Nick Axelrod. I'm an assistant United States attorney in the Eastern District of New York. I was also one of several trial counsel below. To answer Judge Jacob's question, every investor witnessed. There were four investors who testified at trial. There were two investment professionals who testified at trial. All six of those witnesses testified that had they known that the GPB funds were using investor capital to meet distributions, they would not have invested. And the questions that counsel referred to and cited as evidence that the government proceeded on a right-to-control theory were in fact questions related to the materiality of the information that was withheld from them. The right-to-control theory entails a situation where the information that is misleading or omitted is compressed with the money or property object of the fraud. And in Simonelli, the Supreme Court said that that's not correct. The intangible interest in information does not qualify as money or property within the meaning of the wire fraud statute. The right-to-control statute or theory, I apologize, Your Honor, had its own jury instructions, which are cited in Simonelli, which were not given in this case. The jury was, I think we can all agree, properly instructed on the money or property object. Defense counsel has not cited any instance where the government argued that the court, that the jury, I apologize, could take the misleading information and treat it as satisfying the separate money or property object. That argument simply was not made. The district court did not in any way clearly err in determining that Jeffrey Schneider did not raise a substantial question as to any issue. And what the defendant is doing, in essence, is asking this Court to reweigh the evidence. Well, can you just address the issue of the clemency? Your Honor, we don't believe that the clemency granted to Mr. Gentile has any bearing on whether Mr. Schneider has presented a substantial question. And I don't believe that the reply brief where this is raised for the first time provides the Court with any legal framework by which to consider an executive grant of a commutation as to one defendant in the case of another defendant. Because it doesn't bear on any of the questions presented to the panel. Well, if the President of the United States had, let's just say, pardoned the co-defendant in this case and said even more specifically that for a number of different reasons there were substantial questions raised by the conviction, would that have some bearing? I mean, he speaks for the executive branch. Does he not? Your Honor, I'm leery, Judge Leler, of answering a hypothetical like that. I candidly don't know the answer to that question. It would be a matter of the internal process of the Department. That has not happened here. What was done here is a grant of commutation. So what I think Mr. Colton is arguing, maybe not as directly but indirectly, is that the fact of the commutation itself presents a possible substantial question. So that's all I'm asking you to address. That's not something that we've ever had to deal with. So can you help us with that? I can try, Your Honor. Okay. I do not believe that the fact of a commutation bears at all on the co-defendant's case. And just to be clear, the issues substantially overlap between Mr. Gentile and Mr. Schneider. There are some differences. There are some differences where that matters, Your Honor. For the most part, they overlap. Mr. Schneider did not join in Mr. Gentile's now mooted motion. So to be clear, only certain issues are actually properly before the Court. Nonetheless, the Constitution vests the pardon power absolutely and alone in the President. By virtue of his election by the American people, it's his right to commute a sentence or pardon for any reason that he sees fit. Or no reason at all. Or no reason at all, Judge Jacobs, and without providing any explanation. And what the defendant has not done is provided any legal framework through which that grant as to one defendant could bear on whether there's a substantial question as to another defendant because the commutation itself does not require any reasons. And... What is the posture? So, in other words, are we looking, are we reviewing the district court's decision in the first instance, or are we, is it de novo review? So, Your Honor, this Court reviews the district court's bail determinations for clear error. This is not a court, this is not a court that considers issues in the first instance. This Court is cabined to the review of the record. But the commutation obviously occurred after the district court had made its decision. It did, Your Honor, but in our view, the record on appeal is unchanged. The record is the record that was presented to the district court. That is the record that the district court ruled on in denying bail pending appeal. And the issues that were then raised in the motion for bail pending appeal before this Court. Let me ask this. Mr. Colton made a point, and that is in the papers, that the court was permitted to convict on the basis of a fund that had been closed before the misstatements or fraudulent statements were made. How can that be? So, Your Honor, as a factual matter, it is not correct that the Holdings I fund was closed at the time the misstatements began. For instance, the performance guarantee scheme, which is not mentioned anywhere in Mr. Colton's papers, which is independently sufficient to... That's Mr. Lash's... That's subject to Mr. Lash's testimony. Absolutely. That is correct. And the 2014 Holdings I guarantee was papered before the Holdings I fund closed. But leaving that aside, because we would agree that most investors in Holdings I had invested. So taking that in the question, there were multiple ways in which money or property was the object of the fraud as to the Holdings I investors. And the district court addressed this. The district court addressed this at Government Appendix 702 through 704. And I'll just walk, Your Honor, with your permission, of course, through it. So to begin with, the Holdings I investors had the option to try to redeem their interest in the fund. This Court has held, as has the Supreme Court, that a fraud that induces an individual not to demand their property back, in other words, unlawful retention of property, satisfies the money or property object. And the sites for that are the Gatto case, Porcelli case, and the Males case, all of which build on the Supreme Court's foundational decision in Pasquitano. But even setting aside the right to redemption, those Holdings I investors, Your Honor, continued to pay fees to the defendants to manage those funds. So they continued to part with property. And in addition to that, Your Honor, the Holdings I investors were solicited for new investors, for new and additional investments. And they were told, invest in Holdings II. It's just like Holdings I. Holdings I is going very well. And the lies in the Holdings I PPM and as to the Holdings I performance were additionally relevant because Holdings I was used as a marketing vehicle for Holdings II, automotive portfolio, and successive funds, which is why the performance guarantee scheme was so foundational to the evidence. Because the defendants' motive to manufacture the results for Holdings I in 2014 was because they understood that the early performance of a fund like Holdings I would be critical to raising money in the future. Now, there are two other points as to this issue that I think are salient, and I don't want to sit down without making them. The first is, this issue, the money or property object, applies only to one of three counts of conviction. It applies only to the wire fraud conviction. So even were Your Honor to disagree with me or to say, Mr. Axelrod, it is at minimum a substantial question, it wouldn't be grounds for reversal under 3143 because it wouldn't impact the sentence imposed. It would not result in a new trial or reversal as to all counts of conviction for which a sentence is set. What were the other counts? Securities fraud conspiracy and also substantive securities fraud, Your Honor. Mr. Schneider was sentenced to six years in prison, and that sentence was applied equally to counts two and three. Count three is securities fraud, substantive securities fraud. It has a 20-year maximum, and Mr. Schneider was sentenced to six years on that count. So untouched by Seminelli. It is untouched by Seminelli, Your Honor. Now, the only other point on this issue that I would like to make, Your Honor, is to the extent the Court sees it as an error, this is actually not a legal error, and I would refer, Your Honor, to the Denoyer case. When you say this error, which one? The Holdings 1, I apologize, Judge Jacobs. The Holdings 1, the Holdings 1 right to control question. And I would actually, Judge Jacobs, you sat on a panel in Denoyer, which is 637 F3rd 103. Denoyer case. Yes. And what Denoyer explains is that a legal error where you can't presume harmlessness, you can't presume that the jury properly convicted refers to something like an error in the jury instructions. And Denoyer cites the Griffin case from the Supreme Court for that principle. Denoyer contrasts an error in the jury instructions, and there is none here, because everybody can agree that the money or property object was properly described in the jury instructions, with a factual error, as was the case in Denoyer, where there's simply a failure of proof as to an element. And if the Court were to say there was no money or property as to the Holdings 1 investors, that is a failure of proof as to an element. It's not a legal error. And under Denoyer, if there's any factually sufficient basis in the record for the jury to have reached that conclusion, then the Court should affirm. And there was here, because there are multiple other theories of fraud at play in this case. There is, of course, the performance guarantee scheme. The performance guarantee scheme is the central scheme. The performance guarantee scheme... In the government scheme. The performance guarantee scheme is the scheme to which the defendants simply have no answer, Your Honor. And it is included in every single count of conviction, and it is not addressed at all in their papers. Thank you. Is that you all done? Because I don't know that we've got any further questions. Unless the Court has any other questions, I have nothing further, Your Honor. Okay. Thank you very much. Thank you, Mr. Miller. Thank you, Mr. Colton. And we will reserve the decision, and we'll adjourn the meeting.